IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 17-cv-00557-WYD-CBS

FRUTOSO CHAVEZ,

    Plaintiff,

v.

JERRY MARTINEZ,
TONY SMITH, and
DENVER PUBLIC SCHOOLS,

    Defendants.

# ORDER

I.    INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on both Defendant Jerry Martinez's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Defendants Tony Smith and Denver Public Schools' Motion to Dismiss. (ECF Nos. 17 and 18).

On February 3, 2017, Plaintiff filed his Complaint in the District Court for the City and County of Denver, Colorado, alleging a First Amendment retaliation claim under 42 U.S.C. § 1983 and a state law claim for intentional interference with contract.[1] On March 2, 2017, the Defendants removed the action to this Court based on federal

---

[1] Plaintiff initially asserted a third claim for wrongful discharge in violation of Colorado's public policy against Defendants Smith and Martinez, but in his response to the pending motions, Plaintiff agreed to dismiss that claim. Thus, I find that Plaintiff's wrongful discharge claim is hereby dismissed and will not be addressed further in this Order. (Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss at 2). Plaintiff also clarified that while the school district is vicariously liable for any liability against the individual Defendants, this is "not a separate claim in and of itself." (*Id.*)

question jurisdiction.  Plaintiff's claims arise from his employment as an Assistant Principal with the Denver Public School District ("District") and are asserted against Jerry Martinez, a Principal at the Noel Community Arts School ("Noel"); Tony Smith, a deputy instructional superintendent for the District; and the District itself.

Plaintiff, a former Assistant Principal for grades 6-12 at Noel, alleges that he was terminated from his employment after speaking out on matters of public concern. Specifically, in August 2015, the school was conducting a teacher survey of the two Noel school Principals, Jerry Martinez and Suzanne Morey.  At all relevant times, Martinez was Noel's Chief Operating Officer while Morey was the Chief Academic Officer.  On August 28, 2015, Martinez informed Plaintiff that Martinez and an intern had "intentionally falsified several [teacher] surveys to lower the evaluation of Ms. Morey." (Compl. ¶¶ 1-6).  Plaintiff alleges that Defendant Smith was aware of Martinez's survey-falsification plan ("Plan") and had given his approval.  (Compl. ¶ 5).  The Plan apparently worked because "Ms. Morey was demoted and moved to a different position in December, 2015, and told to resign, in March, 2016."  (Compl. ¶ 6).

Since Smith was involved in the Plan, Plaintiff "went above Mr. Smith's head to Mr. Johnson, the instructional supervisor, and, on September 17, 2015, reported the fraud to him."  (Compl. ¶ 7).  Johnson reported Plaintiff's concerns about the surveys to Martinez.  (Compl. ¶¶ 7-8).  Also, at Johnson's direction, Plaintiff reported the Plan to Noel's human resources department.  Martinez ultimately "admitted that he had taken the survey intended solely for the teachers, but, in spite of this admission, human resources came to no conclusion regarding the existence of the fraud."  (Compl. ¶ 8).

Plaintiff alleges that following his report to Johnson, Martinez began to retaliate against him. Plaintiff had hired a dean, Charles Jones, for his middle school. Martinez "told this dean that [Plaintiff] had told the dean's principal, Ms. Morey, that the dean was not doing his job, that he needed to be replaced, and that he was incompetent. This tension became so bad that the dean would not even talk to [Plaintiff]. [Plaintiff] determined what had happened and took the dean to Mr. Martinez, who admitted to the dean that he had not been telling the truth." (Compl. ¶¶ 9-10).

Additionally, in October 2015, Plaintiff drafted "on the computer a few pages of responses to questions from Mr. Smith. To sabotage [Plaintiff], Mr. Martinez deleted [Plaintiff's] written responses to these questions while not touching the written responses of other people that were in the computer." (Compl. ¶ 11). In November 2015, Martinez "publicly blamed" Plaintiff for decisions Martinez had made about recess duties. Also, in November 2015, Noel's high school administratively separated from the middle school, and Plaintiff and Morey "were demoted and assigned to the middle school." (Compl. ¶¶ 12-13).

Plaintiff also alleges that Smith began to retaliate against him after he reported the Plan to Johnson. In November 2015, Smith directed Plaintiff to cease speaking with human resources or Johnson about any subject. "In February, 2016, Mr. Smith began telling the teaching staff that the building culture was toxic because [Plaintiff and] Ms. Morey had created a culture of jumping the chain of command." (Compl. ¶¶ 15-16). Smith further made the decision to remove the dean Plaintiff had hired. (Compl. ¶ 19).

Plaintiff further alleges that Smith impeded his ability to remain in his position at

Noel when a new principal was hired and vetoed Plaintiff's attempts to secure a job with another school in the District. Plaintiff "was not even told of the interview process for his own position until after the finalists were selected." (Compl. ¶ 20). "On April 11, 2016, [Plaintiff] interviewed with the Collegiate Prep Academy, another high school in the Denver public school system. The interview went well and the principal in charge of the interview team said that the team was impressed with [Plaintiff]. However, after the interview, Mr. Smith spoke with the team and told the team that [Plaintiff] lacked the skill set needed for the job. The team disagreed but eventually capitulated because it knew that it could not hire [Plaintiff] if Mr. Smith disapproved." (Compl. ¶ 21).

On June 3, 2016, the District asked Plaintiff for his resignation. Plaintiff refused, and his contract expired by its own terms on August 1, 2016.

II.  STANDARD OF REVIEW

  A.  Fed. R. Civ. P. 12(b)(6)

Defendants seek dismissal of Plaintiff's First Amendment retaliation claim and state law claim pursuant to Fed. R. Civ. P. 12(b)(6). A defendant may move to dismiss a claim under Rule 12(b)(6) where the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937,

1949 (2009) (quoting *Twombly*, 550 U.S. at 570). When analyzing a 12(b)(6) motion, "all well-pleaded factual allegations ... are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State School for Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519

F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The Defendants have attached exhibits to their motions to dismiss. Those exhibits consist of: the Denver Public Schools Job Description Form for Assistant Principal, Middle School; Plaintiff's Employment Agreement with the District; and Aurora Public Schools' Board Meeting Minutes. (*See* Mot. to Dismiss, Ex. 1-3, ECF No. 18).

Generally, I consider only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (stating that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Here, neither party disputes the Job Description Form's authenticity. Further, Plaintiff referred to his "normal job duties" in the Complaint and incorporated the Job Description Form into his Response in Opposition to the Motions

to Dismiss. (Compl. ¶¶ 7-8; Resp. in Opposition to Mots. to Dismiss at 4-5). Thus, relying on the exceptions noted above, I have reviewed and considered the District's Job Description Form, Assistant Principal, as part of my analysis under Rule 12(b)(6).

    B.    <u>Fed. R. Civ. P. 12(b)(1)</u>

Defendants also seek dismissal for lack of subject matter jurisdiction over Plaintiff's intentional interference with contract claim pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.*

III. ANALYSIS

  A. First Amendment Retaliation Claim

Defendants urge dismissal of Plaintiff's First Amendment claim arguing that the allegations fail to demonstrate that Plaintiff's speech is constitutionally protected because it was made as part of his official duties and is not a matter of public concern. Defendants also argue that the individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim, and that the municipal liability claim fails for lack of a constitutional violation and a municipal policy or custom. In response, Plaintiff argues that because he alleged sufficient facts to establish his complaint about teacher survey falsification was not made pursuant to his official duties and that it reported widespread fraud within the District, the motions to dismiss must be denied.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). "When a defendant asserts the defense of qualified immunity, 'the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct.'" *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (quotations and internal quotation marks omitted). If the plaintiff fails to establish either of these prongs, the defendant prevails on its defense. *Id.* at

1134-35. The court has "discretion to decide which of the two prongs should be decided first in light of the circumstances in the particular case at hand." *Id.* at 1135.

Turning to the first prong of the qualified immunity analysis in the context of a motion to dismiss, I analyze "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). This determination turns on the substantive law regarding the constitutional right at issue. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). In the case at hand, Defendants argue that Plaintiff cannot show that his First Amendment right to free speech was violated because his speech is not constitutionally protected as a matter of law. Thus, they argue that Plaintiff's speech existed due to his professional responsibilities.

The Supreme Court *in Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 574 (1968) held that an employee who speaks on issues of public importance may not be dismissed from public employment. The interests of public employees on commenting on matters of public concern must, however, be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees. *Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012). "To 'achieve this balance', the court must inquire into: (1) whether the speech was made pursuant to an official's duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests as employer in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the

adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Id.* The first three prongs are issues of law to be decided by the court. *Id.* Here, Defendants assert that the speech at issue was made pursuant to Plaintiff's duties as a District Assistant Principal and did not involve matters of public concern.

The Supreme Court has made clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As the Court stated:

> Restricting speech that owes its existence to the public employee's professional responsibilities does not infringe on any liberties the employee might have employed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id.*

In *Garcetti*, it was undisputed that the employee's speech was made pursuant to his employment duties; thus, the Supreme Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." 547 U.S. at 424. It rejected, however, "the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions." *Id.*

I now turn to the allegations in the Complaint, which I construe in a light most favorable to Plaintiff. As I previously set forth in detail, Plaintiff was an Assistant Principal at Noel. Plaintiff reported to two Noel Principals, Defendant Martinez and

Suzanne Morey. Directly up the chain of command was Defendant Smith, the instructional superintendent, who was supervised by Randy Johnson. In August, 2015, Noel was conducting a teacher survey of both Martinez and Morey. Martinez reported to Plaintiff that he and an intern, with the approval of Smith, had intentionally falsified teacher surveys to lower the evaluation of Morey. Morey was ultimately demoted and forced to resign her employment in March, 2016. Plaintiff reported the survey falsification to Johnson, who informed Smith of Plaintiff's concerns. At Johnson's request, Plaintiff also reported the survey-falsification Plan to the human resources department.

I now turn to the District's Job Description Form for Assistant Principal, Middle School. It is clear that the Job Description required Plaintiff to "[e]nsure for the proper maintenance, accuracy, completeness, confidentiality and security of all data/records, including: personnel evaluations ... and instruction and organization surveys and reports" and to "[m]onitor[] all staff ..." (*See* Mot. to Dismiss, ECF No. 18, Ex. 1-3). However, Plaintiff minimizes the importance of the Job Description, arguing that the speech was not part of his official job duties because he "was blowing the whistle on fraud by people over him, on a principal (Defendant Martinez) regarding another principal (Ms. Morey). He had no supervisory responsibility over these people who were above him." (Resp. at 4-5). While I acknowledge that "an employee's official job description is not dispositive . . . because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform," it is a factor that I nonetheless consider. *Brammer-*

*Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007).

Additionally, my inquiry into whether the speech was made as part of Plaintiff's job duties "is a practical one", *Garcetti*, 547 U.S. at 424, looking both to the content of the speech, as well as the employee's chosen audience." *Rohrbough v. Univ. of Colo. Hospital Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (quotation omitted). I must determine "whether the speech at issue is itself ordinarily within the scope" of Plaintiff's duties, "not merely whether it concerns those duties." *Lane v. Franks*, __ U.S.__, 134 S.Ct. 2369, 2378 (2014). "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting 'in his or her professional capacity.'" *Brammer Hoelter*, 492 F.3d at 1203 (quotation omitted).

"Consequently, if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter*, 492 F.3d at 1203; *see also Green v. Bd. of Cnty. Com'rs*, 472 F.3d 794, 801 (10th Cir. 2007) (looking at whether the alleged constitutionally protected activities "stemmed from and were the type of activities that" the employee was paid to do.). This is true even if the speech "concerns an unusual aspect of an employee's job that is not part of his everyday functions." *Brammer-Hoelter*, 492 F.3d at 1203 (quotation omitted). The Tenth Circuit has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough*, 596 F.3d at 746 (quotation omitted).

I find that the statements made by Plaintiff to Randy Johnson were made as part

of Plaintiff's official duties.  The conversation involved Plaintiff reporting the falsification of teacher surveys by Martinez and an intern, which resulted in the demotion and eventual resignation of Principal Morey.

Even construing the factual allegations in the light most favorable to Plaintiff, I find that Plaintiff was acting in his professional capacity during the conversation, and was on the clock and being paid.  Plaintiff's statements involved the falsification of a recent teacher survey, which squarely falls into Plaintiff's job duties to monitor all staff and ensure the accuracy of personnel evaluations and organization surveys.  The conversation clearly stemmed from and was the type of activity that Plaintiff was paid to do.  I find no support for Plaintiff's argument that he was not required to report survey inaccuracies by a supervisor.

Moreover, in *Reinhardt v. Albuquerque Pub. Schools Bd. of Edu.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010), the Tenth Circuit identified two factors that suggest an employee was speaking as a private citizen rather than pursuant to official duties: "(1) the employee's job responsibilities did not relate to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing." *Id.* Applying these factors to this case, Plaintiff was hired as an Assistant Principal to monitor staff and ensure the accuracy of evaluations and surveys, and his speech was made to Randy Johnson, who was a supervisor within Plaintiff's chain of command. *See Trant v. Okla.*, 426 Fed. Appx. 653, 659 (10th Cir. 2011) (holding that "[s]peech about workplace matters communicated through proper chain of command is typically deemed within the scope of official duties."); *see also Rohrbough v. Univ. of Colo. Hosp.*

*Auth.*, 596 F.3d 741, 747-48 (10th Cir. 2010). Thus, I find that Plaintiff's statements reporting the Plan were made as part of his official duties.

Based on the foregoing, I find that Plaintiff has failed to show that Defendants violated a constitutional right in connection with his First Amendment right to free speech. Instead, I find as a matter of law that Plaintiff's speech is not constitutionally protected because it was made as part of his official job duties. Accordingly, the individual Defendants are entitled to qualified immunity.

Defendants also argue that the claim against the District should be dismissed because Plaintiff is unable to show a First Amendment violation committed by any of the individual Defendants, or any of the District's other employees. I agree. The District may not be held liable pursuant to 42 U.S.C. § 1983 when there has been no underlying constitutional violation by one of its employees. *Washington v. Unified Gov't of Wyandotte County, Kan.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Moreover, I find that Plaintiff's Complaint fails to include sufficient factual allegations to state a plausible claim that the District's alleged unlawful actions were taken by either an official with final policymaking authority or resulted from an official policy or custom. *See Randle v. City of Aurora*, 69 F.3d 441, 446 (10th Cir. 1995); *also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978). Accordingly, I dismiss Plaintiff's claim against the District.

    B.    <u>Intentional Interference With Contract Claim</u>

The only remaining claim is Plaintiff's state law claim for intentional interference with contract. 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same

transaction or occurrence as the federal claims.  However, a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Smith v. City of Enid By and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).  Here, because I dismissed Plaintiff's federal claim, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.  Thus, it is dismissed without prejudice.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendant Jerry Martinez's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Defendants Tony Smith and Denver Public Schools' Motion to Dismiss (ECF Nos. 17 and 18) are **GRANTED** to the extent that Plaintiff's First Amendment Retaliation Claim is **DISMISSED WITH PREJUDICE,** and Plaintiff's state law Intentional Interference with Contract Claim is **DISMISSED WITHOUT PREJUDICE.**  The Clerk of Court shall close this case.

Dated:  September 5, 2017

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge